# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:11cv31

CHRISTOPHER D. ELLER,   )
            )
  Plaintiff,     )
            )
v.          )   ORDER
            )
GARY KAUFMAN, et al.,   )
            )
  Defendants.    )
_____ )

   Pending before the Court are Defendants' Motions to Dismiss [# 37, # 38, & # 41] and Motion for Judgment on the Pleadings [# 43]. Plaintiff brought this action against Defendants asserting a number of claims. Specifically, Amended the Complaint asserts four federal claims pursuant to 42 U.S.C. § 1983, two claims for battery under North Carolina law, and two respondeat superior claims. The claims all arise out of the alleged denial of medical care for Plaintiff while he was a pre-trial detainee and his alleged mistreatment while in custody. Defendants move to dismiss on various grounds. The Court **GRANTS in part** and **DENIES in the part** the Defendants' motions.

-1-

## I.  Background

### A.  The Acts Giving Rise to the Claims Asserted in the Amended Complaint

On June 29, 2008, Plaintiff was arrested in North Carolina on drug related charges.  (Pl.'s Am. Compl. ¶ 15.)   Plaintiff was held at the Cherokee County Detention Center in Murphy, North Carolina (the "Detention Center"), while awaiting trial on these charges.  (Id. ¶¶ 4, 15.)  During the first week of his incarceration, Plaintiff tripped over a plastic bin lid at the base of a shower stall and lacerated his lower back.  (Id. ¶ 16.)  As a result of the laceration, Plaintiff suffered localized pain and soreness in his lower back.  (Id. ¶ 17.)  After the pain continued and Plaintiff's condition progressively worsened, he submitted three "Sick Call Slips" to the staff of the Detention Center.  (Id. ¶ 18.)  These documents were provided by the Detention Center staff to inmates as a means of requesting medical attention in writing. (Id.)

Plaintiff was eventually seen by Defendant Gary Kaufman, the medical supervisor of the Detention Center and a physician's assistant.  (Id. ¶¶ 5, 19.)  During this visit, Plaintiff told Defendant Kaufman about his fall and the laceration on his back.  (Id. ¶ 19.)  Plaintiff complained of pain, irritation, and itching.  (Id.)  In addition, Plaintiff complained that he could feel heat emanating from the laceration.  (Id.)  Defendant Kaufman, however, did not examine the laceration or

-2-

request that Plaintiff remove his shirt, and he did not treat the laceration with any medication.  (Id. ¶¶ 20-21.)

Subsequently, Plaintiff's condition deteriorated, and his pain intensified, his physical strength declined, and he experienced frequent dizzy spells.  (Id. ¶ 22.) Plaintiff again requested medical care, but his requests were ignored.  (Id.) Although Plaintiff made numerous verbal requests for medical treatment, he was not provided with a grievance form and was not informed that medical treatment would be denied.  (Id. ¶ 23.)   Defendant Kaufman and the guards at the Detention Center believed that Plaintiff was faking his injury.  (Id. ¶ 24.)

Meanwhile, Plaintiff was rapidly losing weight, losing more than a third of his body weight.  (Id. ¶¶ 26, 31.)   Plaintiff was also experiencing uncontrollable diarrhea and became so weak that he could not stand, eat, use the toilet, or care for himself.  (Id. ¶¶ 26-27.)  Because Plaintiff was too weak to use the toilet, he was left in his cell lying in his own excrement for long periods of time.  (Id. ¶ 27.)  Two unidentified guards with the Detention Center - Defendants John Doe # 1 and John Doe # 2 - would enter Plaintiff's cell and drag him around the cell floor in an attempt to force Plaintiff to clean up his excrement, which resulted in Plaintiff sustaining cuts and scars on his knees.  (Id. ¶¶ 9-10, 28.)  These two guards also physically assaulted, threatened, verbally abused, and ridiculed Plaintiff.  (Id. ¶

-3-

29.)  For example, they threatened Plaintiff with physical abuse and pepper spray to force him to use the toilet and clean his cell.  (Id. ¶ 30.)

Again Plaintiff requested medical treatment and care from a physician, but his requests were ignored.  (Id.  ¶ 32.)  Plaintiff also requested that he be taken to the hospitable and provided with a wheelchair, but these requests were similarly ignored.  (Id. ¶ 33.)  The Sheriff of Cherokee County, Defendant Keith Lovin, personally came to see Plaintiff in his cell and witnessed Plaintiff's physical condition, but only told him "to get up and start eating or you are doing to die." (Id. ¶¶ 34-35.)  Despite the fact that Plaintiff was in need of immediate medical care, Defendant Lovin did not order medical treatment for Plaintiff and ignored Plaintiff's personal requests to him for medical care.  (Id. ¶¶ 32, 35, 37.)  Plaintiff also contends that he made personal requests for medical care to Defendant Keith Watkins, the supervisor of detention officers at the Detention Center, and Defendant Joe Wood, the Chief Deputy of the Detention Center. (Id. 7-8, 32.)

Rather than transport Plaintiff to the hospital to receive medical care, Defendant Lovin signed a Transfer Order on July 28, 2008, ordering Plaintiff's transfer to Central Prison in Raleigh because of Plaintiff's perceived psychological problems.  (Id. ¶ 41.)  The Transfer Order did not list physical illness as a reason for the transfer.  (Id.)  In order to transfer Plaintiff to Central Prison, Defendants

placed Plaintiff in the back seat of a service vehicle because Plaintiff was too weak to walk to the car and enter the vehicle unassisted.  (Id. ¶ 42.)

When the vehicle arrived at Central Prison in Raleigh, North Carolina, the driver informed Defendant Jonathon Church, a detention officer at Central Prison, and Defendant John Doe # 3, an unidentified detention officer at Central Prison, that Plaintiff was unable to walk.  (Id. ¶¶ 11-12, 43.)  Defendants Church and Doe # 3 then pulled Plaintiff from the vehicle face down onto the ground and placed him in handcuffs and leg chains.  (Id. ¶ 44.)  As a result, Plaintiff suffered serious injury to his back.  (Id.)  Subsequently, Defendants Church and Doe # 3 placed Plaintiff in a wheelchair with no feet rests.  (Id. ¶ 45.)  Although Defendant Church ordered Plaintiff to hold up his feet, Plaintiff was too weak to do so, and Defendant Church proceeded to push the wheelchair over Plaintiff's right foot, causing severe injury to his second toe.  (Id.)

Plaintiff was then placed in a solitary room.  (Id.  ¶ 46.)  When Plaintiff begged Defendants Church and Doe # 3 for medical attention, they sprayed him with mace.  (Id.)  Guards at Central Prison then ordered him to remove his clothes. (Id. ¶ 47.)  When Plaintiff was physically unable to remove his clothes, the guards placed Plaintiff on a table and shocked him with either a stun gun or some other device.  (Id.)   At some point, Plaintiff's clothes were removed, and the personnel

-5-

at Central Prison noticed the infection on his back from where he had cut himself when he fell in the shower. (Id. ¶ 48.) Central Prison personnel then called an ambulance, and Plaintiff was immediately taken to Wake Medical and Health Hospital ("Wake Medical") in Raleigh, where he was placed in the Intensive Care Unit. (Id.)

When Plaintiff was admitted to Wake Medical, he weighed less than 150 pounds. (Id. ¶ 59.) A month earlier, Plaintiff weighed 260 pounds. (Id.) The infection that started on Plaintiff's back where he cut himself, had spread throughout his body, including his spine. (Id. ¶ 56.) The infection devastated Plaintiff's bone structure, impeding the sensory stimuli and motor impulses throughout his body, kidneys, eyes, stomach, and brain. (Id.)

At Wake Medical, a MRI of Plaintiff's lumbar spine showed that he had an "extensive lumbar epidural abscess with diskitis and osteomyelitis." (Id. ¶¶ 49, 51.) Plaintiff was placed on Vancomycin and an incision was made to drain the abscess on July 30, 2008. (Id. ¶¶ 49, 52.) Drainage revealed a STAPH infection, and he was treated with Vancomycin and Rifampin for forty-two days. (Id. ¶ 52.) During this procedure, however, Plaintiff had respiratory failure and acute renal failure. (Id. ¶ 54.) Plaintiff had two additional surgeries in August 2008 to place a metal cage around his spine and have plates inserted to secure the spine. (Id. ¶ 55.)

-6-

Eventually, Plaintiff's condition stabilized, and he was moved to a private room to begin a nutritional regimen and antibiotic treatment to rid himself of the remaining STAPH infection. (Id. ¶ 58.) On August 21, 2008, Plaintiff was discharged from the hospital and returned to Central Prison. (Id. ¶ 60.) Plaintiff, however, has permanent complications from the infection and back injury, which render him unable to walk or use his lower body. (Id. ¶¶ 61-2.) Subsequently, Plaintiff brought this action against Defendants, asserting a number claims.

**B. The Legal Claims Asserted by Plaintiff in the Amended Complaint**

The Amended Complaint asserts a number of claims against Defendants. Count One asserts a Section 1983 claim against Defendants Kaufman, Lovin, Watkins, Wood, Doe # 1, and Doe # 2 for alleged deprivations of Plaintiff's constitutional rights under the Eighth Amendment to the United States Constitution. Count Two asserts a Section 1983 claim against Defendant Lovin in his official capacity for developing official policies and customs that exhibit a deliberate indifference to the constitutional rights of inmates at the Detention Center. Count Three asserts a Section 1983 conspiracy claims against Defendants Kaufman, Lovin, Watkins, Wood, Doe # 1, and Doe # 2. Count Four asserts a claim for battery under North Carolina law against Doe # 1 and Doe # 2. Count

Five asserts a Section 1983 claim against Defendant Church and Doe # 3 for alleged violations of Plaintiff's rights under the Eighth Amendment. Count Six asserts a state law battery claim against Defendants Church and Doe # 3. Finally, Counts Seven and Eight assert respondeat superior claims against Defendants' Lovin, the Cherokee Sheriff's Department, and the North Carolina Department of Corrections.

## II.    Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of

action.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-

65 (2007); see also Consumeraffairs.com, 591 F.3d at 256.  "[A] formulaic

recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at

555, 127 S. Ct. at 1965.  Nor will mere labels and legal conclusions suffice.  Id.

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned,

the defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S.

____, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief

that is plausible on its face."  Twombly, 550 U.S. at 570, 127 S. Ct. at 1974;

see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

556 U.S. ____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255.

The mere possibility that the defendant acted unlawfully is not sufficient for a

claim to survive a motion to dismiss.  Consumeraffairs.com, 591 F.3d at 256;

Giacomelli, 588 F.3d at 193.  Ultimately, the well-pled factual allegations must

move a plaintiff's claims from possible to plausible.  Twombly, 550 U.S. at 570,

127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Courts review a motion for judgment on the pleadings brought pursuant to

Rule 12(c) under the same standard as a motion to dismiss made pursuant to Rule

12(b). <u>Walker v. Kelly</u>, 589 F.3d 127, 139 (4th Cir. 2009); <u>Burbach Broad. Co. of</u>

<u>Del. v. Elkins Radio Corp.</u>, 278 F.3d 401, 405-6 (4th Cir. 2002).

**III.    Analysis**

**A.    The Motion to Dismiss Filed by Defendants Kaufman, Lovin, Watkins, and Wood**

1.    <u>the motion for summary judgment is premature</u>

Defendants Kaufman, Lovin, Watkins, and Wood (collectively the "Cherokee

County Defendants") move to dismiss the Amended Complaint or, in the

alternative, move for summary judgment on Plaintiff's claims.  Specifically, the

Cherokee County Defendants contend that Plaintiff's Section 1983 claims are

barred by the Prison Litigation Reform Act ("PLRA") because Plaintiff failed to

exhaust the grievance procedures at the Detention Center prior to bringing this suit.

This argument, however, depends on numerous documents the Cherokee County

Defendants have attached to their motion.  In short, these Defendants attempt to

convert their Motion to Dismiss into one for summary judgment.

The PLRA requires that a prisoner properly exhaust his or her administrative

remedies prior to filing a civil action challenging the conditions of confinement.

<u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008).  Exhaustion is not a

jurisdictional requirement but an affirmative defense.  <u>Id.</u>  Accordingly, a prisoner

-10-

need not plead exhaustion to state a claim, nor does the prisoner bear the burden of proving that he exhausted his administrative remedies.  Id.  Although the Fourth Circuit has recognized that the Court may address exhaustion at the pleading stage and dismiss a case where failure to exhaust is apparent from the face of the complaint, Anderson v. XYZ Corr. Health Serv., Inc., 407 F.3d 674, 681-82 (4th Cir. 2005), such is not the case here as Plaintiff's failure to exhaust is not apparent from the face of the Amended Complaint.

Finally, although the Court could convert Plaintiff's Motion to Dismiss into a summary judgment motion and allow Plaintiff the opportunity to produce evidence in response to the evidence submitted by the Cherokee County Defendants, the Court declines to do so at this stage of the proceedings.  The Court is reluctant to resolve a factual dispute such as this without providing Plaintiff at least a limited opportunity to conduct discovery and present the Court with a more complete record as to the issue of exhaustion.  Accordingly, the Court **DENIES without prejudice** the Cherokee County Defendants' Motion to Dismiss [# 37] on exhaustion grounds.  The Cherokee County Defendants may reassert their motion as a motion for summary judgment during discovery or after the close of discovery.

    2.    the Cherokee County Defendants have not demonstrated that Count Two fails to state a claim

Count Two of the Amended Complaint asserts a claim against Defendant

Lovin in his official capacity for developing and maintaining policies or customs that exhibit a deliberate indifference to the constitutional rights of inmates at the Detention Center (Pl.'s Am. Compl. ¶ 82), having a policy or custom of failing to exercise reasonable care in hiring officers at the Detention Center (Id. ¶ 83), and inadequately training or supervising the officers at the Detention Center (Id. ¶ 84). The Cherokee County Defendants move to dismiss Count Two for failure to state a claim.

As a threshold matter, the official capacity claim against Defendant Lovin is the same as a claim against the Cherokee County Sheriff's Office. Kentucky v. Graham, 473 U.S. 159, 165-6, 105 S. Ct. 3099, 3105 (1985); see also Gant v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than in name, to be treated as a suit against the entity." Kentucky, 473 U.S. at 166, 105 S. Ct. at 3105.

In order to hold a local government such as the Cherokee County Sheriff's Office liable for a constitutional violation pursuant to Section 1983, a plaintiff must demonstrate that the violation was caused by an official custom or policy of the local governmental entity. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004); Walker v. Prince George's Cnty., MD, 575 F.3d 426, 431 (4th Cir. 2009). "[A]

-12-

municipality cannot be held liable simply for employing a tortfeasor." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). As the United States Court of Appeals for the Fourth Circuit explained in Riddick:

> Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

Riddick, 238 F.3d at 523 (quoting Pembaur v. City of Cincinnati 475 U.S. 469, 479, 106 S. Ct. 1292, (1986)); see also Spell v. McDaniel, 824 F.2d 1380, 1396-87 (4th Cir. 1987).

The Fourth Circuit has identified four ways in which a local governmental entity may be held liable based on a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999); see also Harrison v. Chalmers, 551 F. Supp. 2d 432, 438 (M.D.N.C. 2008). The Cherokee County Defendants offer only the cursory argument that the allegations in the Amended Complaint lack facial plausibility and

-13-

contain only legal conclusions. The Cherokee County Defendants, however, fail to address the pleading requirements of a proper claim against a local governmental entity or address how the factual allegations in the Amended Complaint fail to satisfy these requirement. For example, the Cherokee County Defendant do not address whether Defendant Lovin is a final policymaker under Section 1983 and, thus, whether the Cherokee County Defendants may be held liable for his decisions, including the decision to transfer Plaintiff to Central Prison rather than to the hospital (Pl.'s Am. Compl. ¶¶ 38-41) and the decision to deny Plaintiff's request to Defendant Lovin for medical care (Id. ¶¶ 32-35). See Flood v. Hardy, 868 F. Supp. 809, 812 (E.D.N.C. 1994); cf. Layman v. Alexander, 294 F. Supp. 2d 784, 793 (W.D.N.C. 2003) (Cogburn, Mag. J.) (explaining that because the complaint contained no allegations that the sheriff personally participated in the decision not to transport the plaintiff to the hospital or provide him further medical care, plaintiff would have to rely on a supervisor liability claim). Instead, the Cherokee County Defendants offer one page of argument devoid of any substantive legal argument. Accordingly, the Court **DENIES** the Motion to Dismiss [# 37] as to Count Two.

> 3.     the Amended Complaint does not state a claim for a Section 1983 conspiracy

Count Three of the Amended Complaint asserts a Section 1983 conspiracy claim against the Cherokee County Defendants. (Pl.'s Am. Compl. ¶ 89-95.)   An

-14-

essential element of a civil conspiracy claim under Section 1983 is that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right . . . ." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996); see also Ruttenberg v. Jones, 283 F. App'x 121, 131-2 (4th Cir. 2008) (unpublished); Harrison v. Prince William Cnty. Police Dept., 640 F. Supp. 2d 688, 707 (E.D. Va. 2009); Davis v. Cnty. of Amherst, No. 6:07cv17, 2008 WL 591253 (W.D. Va. 2008).  The Amended Complaint fails to include factual allegations supporting these elements of a conspiracy claim.  Rather, the Amended Complaint contains only conclusory allegations of conspiracy.

In Ruttenberg, the Fourth Circuit affirmed the dismissal of a Section 1983 conspiracy claim where the plaintiffs failed to plead any facts supporting the elements of a conspiracy.  As the Fourth Circuit explained:

> Under Twombly, Appellants were required to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. This requires a "plausible suggestion of conspiracy," Twombly, 127 S. Ct. at 1971, and Appellants needed to plead facts that would "reasonably lead to the inference that Appellees positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," Hinkle, 81 F.3d at 421. The complaint makes the bare, conclusory allegation that the defendants conspired to violate his constitutional rights and that the conspiracy culminated in the fabricated testimony. No common purpose is alleged and nothing beyond conclusory allegations of conspiracy are made. We therefore affirm the dismissal of the § 1983 conspiracy claim.

-15-

Ruttenberg, 283 F. App'x at 132. Similarly, the Section 1983 conspiracy claim asserted by Plaintiff is subject to dismissal as Plaintiff has not alleged factual allegations supporting the essential elements of conspiracy claim. Although Plaintiff is correct that he need not present the Court with specific evidence supporting his conspiracy claim (Pl.'s Resp. Cherokee County Defs.' Mot. Dismiss at p. 17), he must do more than make the bare, conclusory allegations of a conspiracy contained in the Amended Complaint to survive a motion to dismiss. Accordingly, the Court **GRANTS** the Motion to Dismiss [# 37] as to Count Three.

    4.    the individual capacity claim against Defendant Lovin in Count Seven is not subject to dismissal

Count Seven of the Amended Complaint asserts respondeat superior claims against Defendant Lovin and the Cherokee Sheriff's Department. (Pl.'s Am. Compl. ¶¶ 115-20.) Defendant Lovin moves to dismiss Count Seven to the extent it asserts a claim against him in his individual capacity. Defendant Lovin contends that he can only be held responsible for the conduct of his employees in his official capacity. Defendant Lovin does not move to dismiss the claim on any other grounds.

As a threshold matter, it is unclear to the Court the scope and extent of Count Seven because the Amended Complaint fails to specify whether the claim is brought under North Carolina law or Section 1983. To the extent that Count Seven attempts

to assert respondeat superior claims pursuant to Section 1983 against Defendant Lovin in his official capacity and the Cherokee Sherif's Department, such claims would be subject to dismissal as there is no liability under Section 1983 based on a theory of respondeat superior. Riddick, 238 F.3d at 523; Zepp v. Rehrmann, 79 F.3d 381, 385 (4th Cir. 1996); Dillard v. Fox, No. 2:08cv16, 2009 WL 88879 (W.D.N.C. Jan. 12, 2009) (Reidinger, J.). "Liability of local governments and their officials sued in their official capacity under § 1983 cannot be based on respondeat superior but arises only when city or county officials themselves, through an act establishing a policy or custom, cause the constitutional violation." Gordon v. Kidd, 971 F.2d 1087, 1098 (4th Cir. 1992). Moreover, to the extent the claim is based on an alleged policy or custom of the Sheriff's Department, it is redundant of Count Two.[1]

Although supervisory officials such as Defendant Lovin may be held liable in certain circumstances under Section 1983 where their subordinates inflict constitutional injuries, such a claim is not premised on respondeat superior. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). To establish such a claim, a Plaintiff must show:

that the supervisor had actual or constructive knowledge that his

_____

[1]  Defendant is correct that such a claim would only be asserted against Defendant Lovin in his official capacity.

-17-

subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (internal quotations omitted); see also Alston, 304 F. Supp. 2d at 781. Based on the allegations in the Amended Complaint and Plaintiff's response to the Motion to Dismiss, it appears that Plaintiff was attempting to assert a supervisory liability claim against Defendant Lovin (Pl.'s Am. Compl. ¶ 119), as opposed to a respondeat superior claim that is not even cognizable under Section 1983. Such a claim would be asserted against Defendant Lovin in his individual rather than his official capacity. See Lavender v. City of Roanoke Sheriff's Office, 826 F. Supp. 2d 928, 935 (W.D. Va. 2011). Accordingly, the Court **DENIES** the Motion to Dismiss [# 37] as to Count Seven to the extent it asserts a supervisor liability claim pursuant to Section 1983. The Court offers no opinion as to whether the allegations in the Amended Complaint support such a claim because the Cherokee County Defendants did not address this issue in their briefs.

### B. The Motion to Dismiss of Defendant Church

#### 1. the section 1983 claim against Defendant Church in his official capacity is subject dismissal

Count Five of the Amended Complaint asserts a Section 1983 claim against

-18-

Defendant Church in his individual and official capacities for alleged violations of the Eighth Amendment.  (Pl.'s Am. Compl. ¶¶ 11, 98-108.)  Defendant Church, however, is a detention officer with the North Carolina Department of Corrections, and a suit for damages against a state official in his official capacity is actually a suit against his office and, thus, the State.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989); see also Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006) (holding that official capacity Section 1983 claims against university administrators were duplicative of claims against the university's Board of Governors and subject to dismissal); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (holding that official capacity Section 1983 claims against school superintendent were duplicative of the claims against the school board and subject to dismissal); Bright v. McCLure, 865 F.2d 623, 626 (4th Cir. 1989).[1]

Moreover, to the extent that this claim is actually a claim for damages against the State of North Carolina, the State is not a "person" within the meaning of Section 1983 and, therefore, Plaintiff may not maintain a Section 1983 claim for damages against Defendant Church in his official capacity.  Will, 491 U.S. at 64-66,

---

[1]  Although Plaintiff may maintain an official capacity suit against a state official for injunctive relief, see Bennett v. Reed, 534 F. Supp. 83, 85 (E.D.N.C. 1981), Plaintiff does not seek injunctive relief against Defendant Church.

-19-

109 S. Ct. at 2309; <u>Ballenger</u>, 352 F.3d at 844-5; <u>Bennett</u>, 534 F. Supp. at 85;

<u>DeMurry v. N.C. Dep't of Corr.</u>, 673 S.E.2d 374, 381; <u>see also</u> <u>Austin v. N.C. Dep't</u>

<u>of Corr.</u>, No. 3:11cv478, 2012 WL 81442, at *2 (W.D.N.C. Jan. 11, 2012) (Conrad,

C.J.); <u>Floyd v. N.C.  Dep't of Corr.</u>, No. 1:11cv80, 2011 WL 1499669, at *1

(W.D.N.C. Apr. 19, 2011) (Conrad, C.J.); <u>Glover v. Charlotte Corr. Ctr.</u>, No.

3:10cv523, 2010 WL 4718397, at *1 (W.D.N.C. Nov. 15, 2010) (Conrad, C.J.).

Rather, the proper means of asserting such a claims is against Defendant Church in

his individual capacity.  <u>Hafer v. Melo</u>, 502 U.S. 21, 31, 112 S. Ct. 358, 365 (1991).

Accordingly, the Court finds that the Section 1983 claims asserted against

Defendant Church in his official capacity are subject to dismissal, and the Court

**GRANTS** the Motion to Dismiss [# 41] as to the official capacity Section 1983

claims.

       2.    <u>the battery claim asserted against Defendant Church in his</u>
                <u>official capacity is barred by doctrine of sovereign immunity</u>

In Count Six, Plaintiff asserts a battery claim against Defendant Church

under North Carolina law in his individual and official capacities.   (<u>Id.</u> ¶¶ 11, 109-

114.)  Defendant Church moves to dismiss the battery claim brought against him in

his official capacity.  As previously explained in the discussion of Plaintiff's official

capacity Section 1983 claims, Plaintiff's claim for battery against Defendant

Church in his official capacity is actually a claim against the State.  <u>See</u> <u>White v.</u>

-20-

Trew, 720 S.E.2d 713, 717-18 (N.C. Ct. App. 2011) ("If a defendant is sued in his official capacity, the State is the actual party being sued and sovereign immunity bars the claim."); DeMurry, 673 S.E.2d at 380 (explaining that the State is the actual defendant to a claim brought against a Department of Corrections employee in his official capacity); Epps v. Duke Univ., Inc., 468 S.E.2d 846, 850 (N.C. Ct. App. 1996) ("Therefore, an official capacity suit operates against the public entity itself, as the public entity is ultimately financially responsible for the compensable conduct of its officers.").

The doctrine of sovereign or governmental immunity, however, generally shields the state and its officials and agents from being sued in their official capacity for torts committed during the course of performing a governmental function. Toomer v. Garrett, 574 S.E.2d 76, 91 (N.C. Ct. App. 2002); DeMurry, 673 S.E.2d at 380; Epps, 468 S.E.2d at 851. Although the State may waive its immunity by consenting to suit or through a statutory waiver, Epps, 468 S.E.2d at 851, the State has not done so for battery claims. Moreover, the State has not consented to suit or otherwise waived its sovereign immunity by removing this case to federal court because it had not already consented to suit in the state court prior to removal. See Stewart v. N.C., 393 F.3d 484, 490 (4th Cir. 2005) (holding that the state does not waive sovereign immunity by removing a Section 1983 action to

federal court).

Finally, although it is well settled that North Carolina counties and municipalities may waive their immunity through the purchase of liability insurance, see Owen v. Haywood Cnty., 697 S.E.2d 357, 359 (N.C. Ct. App. 2010); Phillips v. Gray, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004); Houpe v. City of Statesville, 497 S.E.2d 82, 87 (N.C. Ct. App. 1998), the Amended Complaint does not allege that the Department of Corrections actually purchased liability insurance that covered the alleged acts,[2] and Plaintiff has not pointed this Court to any legal authority supporting his claim that a state agency may waive its immunity from suit through the purchase of insurance.[3] Accordingly, the doctrine of sovereign immunity bars the official capacity claim against Defendant Church, and the Court **GRANTS** the Motion to Dismiss [# 41] as to the official capacity battery claim contained in Count Six.[4]

---

[2] The Amended Complaint alleges that: "The NCDOC Defendants have waived immunity to the extent that they have purchased liability insurance" (Pl.'s Am. Compl.¶ 114); "The NCDOC has waived immunity to the extent that it has purchased liability insurance" (Id..¶ 126), and "Defendants have waived immunity to the extend they have purchased liability insurance" (Id. ¶ 65). The Amended Complaint, however, contains no factual allegation that the Department of Corrections has purchased liability insurance.

[3] Plaintiff relies on N.C. Gen. Stat. § 153A-435, which only applies to counties, not state agencies such as the Department of Corrections.

[4] Plaintiff's argument that the claims should not be dismissed because Defendant Church's actions were malicious, corrupt, or outside the scope of his duties is misplaced as this would establish a claim against Defendant Church in his individual not his official capacity. See Epps, 468 S.E.2d at 851-52.

-22-

**C.      The Motion for Judgment on the Pleadings Filed by Defendant Church**

1.      Defendant Church's motion based on the PLRA is premature

Like the Cherokee County Defendants, Defendant Church moves to dismiss the Section 1983 claims for failure to exhaust administrative remedies under the PLRA.  The Court finds that resolution of this issue involves factual issues more appropriate for resolution at the summary judgment stage.  Accordingly, the Court **DENIES without prejudice** the Motion for Judgment on the Pleadings [# 43] based on the Prison Litigation Reform Act.  Defendant Church may renew this argument in a motion for summary judgment after the appropriate discovery.

2.      the individual capacity Section 1983 claims against Defendant Church are subject to dismissal for failure to state a claim

Section 1983 itself does not create a federal right, and to a state claim under Section 1983 a "plaintiff must allege that a particular statute or provision of the United States Constitution has been violated which confers a right which Congress intended to be enforceable by private cause of action."  Bio-Med. Applications of N.C., Inc. v. Electronic Data Sys. Corp., 412 F. Supp. 2d 549, 552 (E.D.N.C. 2006); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 285, 122 S. Ct. 2268, 2276 (2002).  Here, the Amended Complaint asserts a Section 1983 claim based on Defendant Church's alleged violations of Plaintiff's rights secured by the Eighth Amendment

to the United States Constitution.  (Pl.'s Am. Compl. ¶ 100.)  Specifically, Plaintiff

contends that Defendant Church exercised deliberate indifference to serious medical

needs and used excessive force in violation of the Eighth Amendment.   The

Amendment Complaint does not allege that any other federal statute or provision of

the United States Constitution has been violated.

The Eighth Amendment to the United States Constitution prohibits the

infliction of cruel and usual punishments."  U.S. Const. amend. VII.  The Eighth

Amendment, however, only applies:

> after the State has complied with the constitutional guarantees
> traditionally associated with criminal prosecutions.... [T]he State does not
> acquire the power to punish with which the Eighth Amendment is
> concerned until after it has secured a formal adjudication of guilt in
> accordance with due process of law.

City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 2983

(1983) (internal quotation and citation omitted).  As the Amended Complaint makes

clear, at the time of the alleged incidents, no formal adjudication of guilt against

Plaintiff had occurred as he was awaiting trial at the time.  (Pl.'s Am. Compl. ¶ 15.)

As a pre-trial detainee, the Eighth Amendment has no application to Plaintiff.  See

City of Revere, 463 U.S. at 244, 103 S. Ct. at 2983; Spell, 824 F.2d at 1384 n.3;

Spell v. McDaniel, 591 F. Supp. 1090, 1101 (E.D.N.C. 1984).  Rather, Plaintiff's

claims are governed by the Due Process Clause.  Id.; Hill v. Nicodemus, 979 F.2d

-24-

987, 990 (4th Cir. 1992). Irrespective of whether such claims are addressed under the same legal standard, a pre-trial detainee must first allege a violation under the Due Process Clause in order to assert a Section 1983 in this Court. Because the Amended Complaint only asserts a claim pursuant to the Eighth Amendment and fails to allege that Defendant Church violated the Due Process Clause, the Court finds that Count Five is subject to dismissal. The Court **GRANTS** the Motion for Judgment on the Pleadings [# 43] as to Count Five and **DISMISSES** Count Five for failure to state a claim.[5] In addition, the Court **DISMISSES** Count One, which also asserts a Section 1983 claim based on the Eighth Amendment.

### 3. the Amended Complaint states a claim for battery against Defendant Church in his individual capacity

Under North Carolina law, a battery is the carrying out of an offer to show violence to another through the infliction of a blow. Dickens v. Puryear, 276 S.E.2d 325, 330 (N.C. 1981); Glenn-Robinson v. Acker, 538 S.E.2d 601, 615 (N.C. Ct.

---

[5] Plaintiff is represented by counsel in this matter; he is not proceeding *pro se*. It is counsel who drafted the Amended Complaint and decided which claims to assert and against whom to assert these claims. Based on a review of the Amended Complaint, it is clear that counsel failed to undertake any sort of review of the applicable law prior to asserting the claims in the Amended Complaint, as the Amended Complaint confuses individual and official capacity claims, fails to sue the correct parties under Section 1983, fails to assert the proper legal claims, asserts non-existent claims, and lumps multiple claims into single counts. It is not the role of this Court to fix Plaintiff's Amended Complaint in response to motions to dismiss. Plaintiff is the master of his complaint and is bound by the decisions of his counsel as to which claims to assert and against whom to assert them. Moreover, even after being put on notice of the deficiencies of the Amended Complaint by Defendant Church's Motion for Judgment on the Pleadings, Plaintiff failed to move to amend; instead arguing only that the Amendment Complaint states a claim for relief under the Eighth Amendment.

-25-

App. 2000); Ormond v. Crampton, 191 S.E.2d 405, 410 (N.C. Ct. App. 1972). It is undisputed that the Amended Complaint alleges that Defendant Church committed a touching against Plaintiff's will. Defendant Church, however, contends that any such use of force or touching was not excessive under the circumstances.

North Carolina allows a law-enforcement officer to use reasonable force to prevent the escape from custody, effect an arrest, or defend himself or a third person from the use of physical force while attempting to effect an arrest or preventing an escape. N.C. Gen. Stat. § 15A-401; Glen-Robinson, 538 S.E.2d at 615; Russ v. Causey, 732 F. Supp. 2d 589, 605 (E.D.N.C. 2010). Accordingly, a civil action for battery under the common law will only lie against a law enforcement officer who, during the commission of an arrest or while preventing an escape, uses force that is excessive under the circumstances. Glenn-Robinson, 538 S.E.2d at 615; Myrick v. Cooley, 371 S.E.2d 492, 496 (N.C. Ct. App. 1988); Thomas v. Sellers, 542 S.E.2d 283, 315 (N.C. Ct. App. 2001). The alleged battery in this case, however, occurred during the transportation of Plaintiff from one facility to another; Plaintiff was not being arrested and was not attempting to escape from custody. Defendant Church has not provided the Court with any legal authority addressing the application of force in such a context.[6]

--------------------------------------------------------

[6] Although Defendant Church argues that he is a law enforcement officer within the meaning of this exception to a common law battery claim, the relevant question is whether the

Even assuming that the same standard applies in this situation, and that Plaintiff must eventually demonstrate that the use of force by Defendant Church was excessive under the circumstances to assert a battery claim, the Amended Complaint contains sufficient allegations that the level of force used by Defendant Church was excessive. The Amended Complaint alleges that despite the fact that the driver of the vehicle transporting Plaintiff informed Defendant Church that Plaintiff was too weak to walk, Defendant Church pulled Plaintiff from the vehicle, put him face down on the ground, placed him in handcuffs and leg chains, and then pulled him up from the back by his handcuffs and ankle chains, injuring his back. (Pl.'s Am. Compl. ¶ 44.) In addition, Defendant Church placed Plaintiff in a wheelchair with no feet rests and proceeded to run over his foot with the wheelchair when Plaintiff was unable to lift his feet on his own, causing severe injury to his toe. (Id. ¶ 45.) Defendant Church then sprayed Plaintiff with mace when he asked for medical attention. (Id. ¶ 46.) Such allegations are sufficient to state a claim for battery against Defendant Church as the use of force was excessive under the circumstances.

Moreover, Defendant Church's contention that the claim is subject to

---

exception even applies in cases not involving an arrest or potential escape as the basis of the rule discussed in the cases cited by Defendant Church is N.C. Gen. Stat. § 15A-401. Defendant Church, however, has not provided the Court with any authority for the proposition that the same exception applies when there is no arrest and no attempt to escape.

dismissal because "Plaintiff has not come forward with any objective, affirmative evidence that his alleged injuries from contact with either the handcuffs, ankle chains, or wheelchair were the result of an intentional battery by Defendant Church" (Def. Church's Br. Supp. Mot. J. Pleadings at p. 18), demonstrates a failure to understand the distinction between a motion to dismiss and/or motion for judgement on the pleadings and a motion for summary judgment, as Plaintiff does not need to come forward with affirmative evidence at the pleading stage. The case relied upon by Defendant involves a plaintiff's burden at summary judgment, not the pleading stage. See e.g. Royster v. McKeon, No. 5:09-CT-3111-BO, 2011 WL 3606459, at *4 (E.D.N.C. Aug. 16, 2011) (granting motion for summary judgment where plaintiff failed to come forward with evidence of unusual force).

Finally, Defendant Church's reliance on public official immunity is equally without merit, as that doctrine does not apply where the official acts maliciously, corruptly, in bad faith, willfully, or deliberately. Epps., 468 S.E.2d at 851; Price v. Davis, 512 S.E.2d 783, 787-88 (N.C. Ct. App. 1999). An officer acts with malice where he violates "clearly established rights." Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003). Accepting the allegations in the Amended Complaint as true, Plaintiff has made a *prima facie* showing that Defendant Church's conduct in spraying Plaintiff with mace when he requested medical attention, throwing him

-28-

face down on the ground, and running over his foot - all while Plaintiff was too weak to move on his own - was done maliciously, in bad faith, willfully, or was outside the scope of his authority.  See Epps., 468 S.E.2d at 851-52.  Accordingly, Defendant Church may not rely on the doctrine of public official immunity at this stage of the proceedings.  The Court finds that Plaintiff has alleged sufficient facts to state a battery claim against Defendant Church in his individual capacity, and the Court **DENIES** Defendant Church's Motion for Judgment on the Pleadings [# 43] on as Count Six in Defendant Church's individual capacity.

### D.    The Motion to Dismiss by Defendant Department of Corrections

Plaintiff asserts a respondeat superior claim against Defendant Department of Corrections in Count Eight.  Although set forth as a single claim for relief, it appears that Plaintiff was attempting to assert a number of different claims in Count Eight.  All of these claims, however, are subject to dismissal.  First, as the Court previously explained, the State is not a "person" within the meaning of Section 1983 and, therefore, Plaintiff may not maintain a Section 1983 claim for damages against the Department of Corrections.  Will, 491 U.S. at 64-66, 109 S. Ct. at 2309; Ballenger, 352 F.3d at 844-5; Bennett, 534 F. Supp. at 85; DeMurry, 673 S.E.2d at 494; see also Austin, 2012 WL 81442, at *2;  Floyd, 2011 WL 1499669, at *1; Glover, 2010 WL 4718397, at *1.  Second, Section 1983 does not provide for

respondeat superior liability. <u>Riddick</u>, 238 F.3d at 523; <u>Zepp</u>, 79 F.3d at 385; <u>Dillard</u>, 2009 WL 88879. And a supervisor liability claim under Section 1983 must be asserted against the supervisor in his individual capacity, not against the Department of Corrections. <u>See</u> <u>Lavender</u>, 826 F. Supp. 2d at 935; <u>see</u> <u>also</u> <u>Shaw</u>, 13 F.3d at 798 (discussing supervisor liability claims against an individual supervisor under Section 1983); <u>Slakan</u>, 737 F.2d at 372 (same).

Third, to the extent Plaintiff is asserting state tort claims against Defendant Department of Corrections, such claims are barred by the doctrine of sovereign immunity. <u>Guthrie</u>, 299 S.E.2d at 534-5; <u>Toomer</u>, 574 S.E.2d at 91; <u>DeMurry</u>, 673 S.E.2d at 380; <u>Epps</u>, 468 S.E.2d at 851. As previously discussed, the State has not waived its immunity for such tort claims. Finally, to the extent that Plaintiff seeks to assert a claim based on the negligence of the employees of the Defendant Department of Corrections, jurisdiction for such a claim rest with the North Carolina Industrial Commission, not this Court. <u>See</u> N.C. Gen. Stat. § 143-291; <u>Guthrie</u>, 299 S.E.2d at 536 ("Under the Tort Claims Act, jurisdiction is vested in the Industrial Commission to hear claims against the State of North Carolina for personal injuries sustained by any person as a result of the negligence of a State employee while acting within the scope of his employment."); <u>Wood v. N.C. State Univ.</u>, 556 S.E.2d 38, 42 (N.C. Ct. App. 2001). Accordingly, the court lacks

subject matter jurisdiction over any negligence claims and they must be dismissed without prejudice. Accordingly, the Court **GRANTS** the Motion to Dismiss [# 38] filed by the Department of Corrections and **DISMISSES** Count Eight.

## IV.    CONCLUSION

The Court **GRANTS in part** and **DENIES in part** the Motions to Dismiss [# 37, # 38, & # 41] and Motion for Judgment on the Pleadings [# 43]. The Court **GRANTS** the motions as to Count Three, Count Five, the official capacity claim asserted in Count Six, and Count Eight. The Court **DISMISSES** Counts One, Three, Five and Eight in their entireties and Count Six to the extent it asserts an official capacity claim against Defendant Church.

Signed: July 24, 2012

Dennis L. Howell
United States Magistrate Judge

-31-